# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DARTON ARCHERY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:21-cv-12930 |
| ) | |
| BOWTECH, INC. ) | Hon. Paul D. Borman |
| ) | |
| Defendant. ) | **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff Darton Archery, LLC, by its attorneys, Edwards Maxson Mago & Macaulay LLP, and for its First Amended Complaint against BowTech, Inc., states:

### PARTIES

1. At all relevant times hereto, Plaintiff Darton Archery, LLC ("**Plaintiff**") is and was a limited liability company organized under the laws of the State of Georgia, with its principal place of business located in Canton, Georgia. The sole member of Plaintiff is Randy Kitts, a citizen and resident of the State of Georgia.

2. Defendant BowTech, Inc. is a corporation incorporated in the State of Delaware with its principal place of business located at 90554 Hwy. 99N, Eugene, Oregon. On or about July 11, 2013, Defendant converted from a business named Extreme Technologies, Inc. (together with BowTech, Inc., "**Defendant**"), a corporation incorporated in the State of Oregon.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the citizenship of Plaintiff is diverse from the citizenship of Defendant, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. Personal jurisdiction by this Court over Defendant is proper pursuant to M.C.L. 600.711 because Defendant consented to jurisdiction over this dispute in the State of Michigan. Further, personal jurisdiction by this Court over Defendant is proper pursuant to M.C.L. 600.715 because Defendant transacted business in the State of Michigan and entered into a contract for services to be performed or for materials to be furnished in the State of Michigan.

5. Venue is proper is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Complaint occurred in this district, and Plaintiff and Defendant consented to venue in the State of Michigan.

### Count I
### (Breach of Contract)

6. Effective January 31, 2006, Rex Darlington ("**Darlington**") and Defendant entered into a License Agreement (the "**Agreement**"), a copy of which is attached hereto as **Exhibit A**.

7. Through the Agreement, Defendant received an exclusive, worldwide license to manufacture, have manufactured, use, sell, import and export archery bows practicing the invention ("**Licensed Product**") claimed in United States Patent No. US 6,990,970 B 1, entitled COMPOUND ARCHERY BOW (the "**Patent**"), and certain other rights.  Ex. A, § 1.

8. On or about December 21, 2021, Darlington assigned to Plaintiff all right, title and interest he possessed in the Patent and the Agreement.

9. The Agreement requires Defendant to pay royalties, due and payable quarterly within 30 days after the end or each January, April, July, and October, for each Licensed Product, sold, transferred, or exchanged. Ex. A, §§ 2 and 3.

10. The royalties due under the Agreement consists of a license fee in the amount $6.00 per Licensed Product up to a maximum of $250,000 per year, after which the license fee is reduced to $4.50 for the remaining portion of the year, with a minimum annual royalty of $150,000 per year. Ex. A, Appx. A.  Further, the Agreement requires a royalty payment of $4.00 per cam assembly separately sold as a replacement component. *Id*.

11. The royalty payments due under the Agreement are subject to inflation/deflation adjustments at the end of 2010 for each three years thereafter. Ex. A, § 13.

12. Defendant was notified of one or more inflation adjustments under the Agreement.

13. The Agreement further provides that interest shall accrue on any unpaid royalties at a rate of 12% per annum. Ex. A, § 6.

14. Beginning in 2017 and continuing to the present, Defendant has failed and refused to pay any royalties due under the Agreement despite its continuing sales of Licensed Product, in breach of the Agreement.

15. Based upon Defendant's historical sales of the Licensed Products, Plaintiff is informed and believes that the amount of accrued royalty payments and interest owed by Defendant to Plaintiff under the Agreement exceeds $1 million.

16. Pursuant to the Agreement, Defendant is required to render, at the end of each calendar quarter, a written statement regarding the number of Licensed Products sold during the quarter. Ex. A, § 4.

17. In and after 2017, Defendant has failed and refused to render any written statements regarding the number of Licensed Products sold.

18. Pursuant to the Agreement, Darlington and Defendant "shall share equally in the cost to defend the [P]atent so long as the exclusive provisions of [the A]greement remain in effect." Ex. A, § 7.3.

19. Further, pursuant to the Agreement, Darlington and Defendant "shall share equally in the cost to enforce the [P]atent, so long as the enforcement litigation

relates to the exclusive portions of the [Patent] licensed to [Defendant] as long as the exclusive provisions of this [A]greement remain in effect." *Id*.

20. The exclusivity provision of the Agreement were never terminated and remain in effect.

21. On October 10, 2021, Plaintiff a Complaint for Patent Infringement ("**Complaint Against Precision**") against Precision Shooting Equipment, Inc. ("**Precision**") in the United States District Court for the District of Arizona under case number 4:21-cv-00321-JGZ (the "**Arizona Case**"), alleging infringement of the Patent.

22. Plaintiff's Complaint Against Precision relates to the exclusive portions of the Patent licensed to Defendant through the Agreement.

23. On October 15, 2021, Precision filed a counterclaim ("**Precision's Counterclaim**") in the Arizona Case which seeks a declaration that the Patent is invalid and unenforceable, at least in part.

24. Plaintiff has incurred costs in the enforcement and defense of the Patent in the Arizona Case.

25. Despite due demand, Defendant has failed and refused to share equally in the cost of the Complaint Against Precision, Precision's Counterclaim or the Arizona Case, in breach of the Agreement.

26. As a direct and proximate result of Defendant's breaches of the Agreement, Plaintiff has suffered damages in excess of $1 million.

WHEREFORE, Plaintiff Darton Archery, LLC request that judgment be entered against Defendant BowTech, Inc. in an amount in excess of $1 million, plus pre-judgment interest, costs, and any other or further relief which this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

**DARTON ARCHERY, LLC**

By: _____

Jamal M. Edwards P.C. (P65536)
jedwards@em3law.com
Michael B. Cohen
mcohen@em3law.com
EDWARDS MAXSON MAGO &
MACUALAY LLP
444 S. Lake Street, Suite 1700
Chicago, IL 60606
Telephone: (312) 803-0378

*Its Attorneys*

# Exhibit A

1-31-2006

## LICENSE AGREEMENT

This "Agreement" effective January 31, 2006, is entered into by Rex Darlington, an individual having residence at 6828 Maple Acres Dr., Whittemore, MI 48770 (hereinafter referred to as "LICENSOR"), and Extreme Technologies, Inc., dba BowTech, a corporation of the State of Oregon, having a place of business at 90554 Highway 99 North, Eugene, OR 97402 (hereinafter referred to as "LICENSEE").

WITNESSETH:

WHEREAS, Rex Darlington has the exclusive right to license the Inventions described and claimed in United States Patent No. US 6,990,970 B 1 entitled COMPOUND ARCHERY BOW (the "'970 Patent") dealing with compound archery bows having pulleys at the ends of the bow limbs, and

WHEREAS, LICENSEE is desirous of manufacturing, using and selling archery bows and components embodying said '970 Patent; and

WHEREAS, the parties desire to vest LICENSEE with an exclusive license as hereinafter described to manufacture, use, and sell archery bows practicing certain aspects of invention claimed in the '970 Patent and archery bow components that, when assembled to a bow, practice the invention claimed in the '970 Patent;

NOW, THEREFORE, the parties have agreed and do hereby agree as follows:

1    LICENSE AGREEMENT Initial & Date _SS_ , _10-16-06_

                                                                             _____, _____

125862.00601/11587809v.1

1. License Grants

    1.1. LICENSOR hereby grants LICENSEE a exclusive, worldwide license to manufacture, use, sell, have manufactured, import and export products embodying the inventions described and claimed the '970 Patent which only and specifically includes all symmetrical and substantially appearing symmetrical dual-cam "compound bow" designs including those in any described divisions, continuations, continuations-in-part, reissues, and reexaminations, of the '970 Patent.

    1.2 LICENSOR hereby grants LICENSEE a non-exclusive license to manufacture, use, sell, have manufactured, import and export compound bows as described and claimed in the '970 Patent, but not included in the licenses granted in Paragraphs 1.1 of this agreement.

    1.3 As used herein the term "Licensed Products" refers to products covered by paragraphs 1.1, and 1.2 of this Agreement.

    1.5 LICENSOR, as a sole exception to LICENSEE'S exclusive license granted herein, may grant a license to Darton Inc. to practice any of the inventions described and claimed in the '970 Patent.

    2. LICENSEE shall pay royalties to the LICENSOR per Appendix "A" for each Licensed Product sold, transferred, or exchanged by LICENSEE. Under this Agreement a Licensed Product shall be considered to be sold when invoiced. No royalty shall be due on Licensed Products which are not accepted or are returned by the customer, and when royalties shall have been paid on such

2    LICENSE AGREEMENT Initial & Date ___SS___ , _10-16-06_

                                                                                      _____ , _____

Licensed Products, they shall be credited against future royalties to be paid hereunder.

3. All royalties provided for by this license Agreement shall be due and payable quarterly and LICENSEE agrees to pay to LICENSOR within 30 days after the end of each January, April, July, and October of each year during which the Agreement is in force, and 30 days after termination of this Agreement the total amount of royalties due and payable on account of its sales under this license Agreement.

4. LICENSEE agrees that it will render to LICENSOR after the end of each calendar quarter, whether or not a royalty payment is due, a written statement setting forth the number of Licensed Products sold during the period covered by such statement. LICENSEE agrees to render reports even if no royalties are due. During the term of this Agreement, and for two years after the termination thereof, LICENSEE shall keep records of units of Licensed Products sold, leased, or otherwise transferred under this Agreement, said records being of sufficient detail to enable LICENSOR and/or LICENSEE to verify all royalties payable and paid under this Agreement. LICENSOR shall have the right to appoint an independent auditor or accountant to inspect said records, upon reasonable notice to LICENSEE, and during normal business hours, to the extent necessary to verify the accuracy of the records and payments herein provided. The cost of said inspection shall be borne by the party requesting the inspection; however, should the inspection reveal an underpayment of royalties of 5% or more, the cost of said inspection shall be reimbursed by LICENSEE.

3    LICENSE AGREEMENT Initial & Date __SS__ , _10-16-06_
                                        _____ , _____

5. If any royalties payable hereunder shall be unpaid for thirty (30) days after the same become payable, or if the LICENSEE shall commit a breach of any of the covenants herein contained on its part to be performed or observed, the LICENSOR may terminate this license by giving thirty (30) days written notice of termination, reciting the grounds therefore. Interest shall accrue on any unpaid royalties at a rate of 12% per annum. If within said thirty (30) day period, said grounds are not cured, this Agreement shall terminate in accordance with such written notice. This Agreement shall not terminate if such grounds are cured or if LICENSEE is diligently working to cure such grounds. Upon expiration or termination of this Agreement, the rights and licenses granted hereby to LICENSEE shall immediately terminate, as shall LICENSEE'S obligations to provide LICENSOR with reports every 3 months under Paragraph 4 of this Agreement. Notwithstanding the foregoing, termination for any reason shall allow LICENSEE a limited license to exhaust any remaining inventory or works-in-process of Licensed Products, subject to payment of the royalty obligations herein. The termination of this Agreement under this paragraph shall be without prejudice to the remedy of the LICENSOR to recover any and all royalties due.

6. Patent Defense and/or Enforcement

    6.1 LICENSOR shall have exclusive control and decision-making authority over any litigation, including any decision regarding defense and/or enforcement of the '970 Patent against infringers.

    6.2 Because of a possible challenge to the patent and the possibility of an interference claim, once the monies owed prior to signing are paid

4    LICENSE AGREEMENT Initial & Date _SC_ , _10-16-06_

    _____ , _____

up, $1.00 of the agreed license fee will be placed in an interest bearing escrow account for the purpose of defending the patent. This account, with a cap of $50,000, will remain in effect for 3 years after the signing date of the agreement. If not used for defense after 3 years from the signing date, the account balance will be the property of Licensor. If Licensor fails to defend the patent, all monies in the escrow account will become the property of Licensee.

    6.3    Both parties shall share equally in the cost to defend the patent so long as the exclusive provisions of this agreement remain in effect. Both parties shall share equally in the cost to enforce the patent, so long as the enforcement litigation relates to the exclusive portions of the '970 patent licensed to the Licensee, as long as the exclusive provisions of this agreement remain in effect. Any damages collected would be shared equally. In the event that Licensee terminates the exclusivity portion of this Agreement, Licensee shall have no liability for any cost to defend or enforce the '970 patent that accrue after termination of exclusivity.

    7.    LICENSEE will not challenge the validity of '970 Patent during the term of this Agreement and will not assist or cooperate with any infringer.

    8.    This License is personal to LICENSEE for its manufacture of and sales to distributors, dealers, and consumers from LICENSEE of LICENSEE'S products. The intent of this license is to specifically exclude OEM manufacturing or sales of products under this license to or for other archery manufacturers. The Licensed Products may only be marketed and sold by LICENSEE under the BowTech trademark or a similar house trademark owned and controlled by

5    LICENSE AGREEMENT Initial & Date ___SS___, _10-16-06_

                                                                                                         _____,_____

BowTech.

9. Unless sooner terminated, this Agreement shall remain in force until the last to expire of the '970 Patent and any divisions, continuations, reissues, reexaminations, or extensions thereof.

10. Marking

10.1 LICENSEE agrees to mark each Licensed Product (or product packaging for Licensed Products if marking of the Licensed Product is impractical) with the following notice, "Licensed under Patent No. 6,990,970 B 1".

10.2 LICENSEE shall include, "Licensed under Patent No. 6,990,970 B 1", on the following materials:

10.2.1 All company catalogs which include Licensed Products, product packaging, and packaging inserted instructions.

10.2.2 The parties agree that notice need not be provided if reference is made only to archery bows in general without description of specific features or advantages of Licensed Products incorporated therein.

11. LICENSOR may and shall assign this Agreement in conjunction with an assignment of LICENSOR'S right to grant the licenses herein, and only to an assignee who assumes LICENSOR'S rights and responsibilities herein. Unless the LICENSOR agrees otherwise in writing, LICENSEE may only assign this Agreement to a successor assignee of its archery bow business. Notwithstanding the above, LICENSEE may assign this Agreement to an affiliated company under a

6    LICENSE AGREEMENT Initial & Date ___SS___, _10-16-06_

majority common ownership and control without restriction.

    12.    INFLATION/DEFLATION

        12.1    The royalty amounts of Paragraph 2, APPENDIX 'A' of this Agreement shall be payable as provided for all LICENSED PRODUCTS SOLD or otherwise distributed from before the Agreement and through December 31, 2010.

        12.2    The royalty amounts payable under APPENDIX 'A' of this Agreement after December 31, 2010 through the remaining term of the Agreement, are to depend upon the purchasing power of the U.S. Dollar, as reflected by the Monthly Consumer Price Index (CPI) (hereinafter referred to as the "index") issued by the U.S. Government. In order to stabilize the purchasing power of such royalties, they shall be subject to adjustment at the end of 2010 and for each three (3) years immediately following in accordance with any fluctuations in the Index.

        12.3    If the Index published for the last November preceding the calendar year in question shall be less than the index value on the effective date of this Agreement, then the royalties payable for the calendar year in question shall be royalties calculated as provided in APPENDIX 'A' of this Agreement minus the same percent of such royalties as the percent by which the point value of the index published for the last November proceeding the calendar year in question is less than the Index value on the effective date of this

7    LICENSE AGREEMENT Initial & Date __SS__ , _10-16-06_

_____ , _____

125862.00601/11587809v.1

Agreement.

12.4    If the Index published for the last November preceding the calendar year in question shall be more than the index value on the effective date of this Agreement, then the royalties payable for the calendar year in question shall be royalties calculated as provided in APPENDIX 'A' of this Agreement plus the same percent of such royalties as the percent by which the point value of the index published for the last November preceding the calendar year in question exceeds the Index value on the effective date of this Agreement.

12.5    In order for any change to be effective under this Section 12, the party that proffers such change shall be written notice to the other party. Any change shall be effective for net sales shipped 2 months after the effective date of such notice.

12.6    The royalty obligations under this Agreement shall continue notwithstanding any challenges by third parties to the validity and/or enforceability of the Licensed Patents. However, if the patent is deemed invalid, the LICENSEE'S obligations hereunder shall terminate.

13.    OPTION TO TERMINATE.

13.1    LICENSEE may terminate the Agreement by providing
·        LICENSOR with not less than 240 days notice of LICENSEE'S

8    LICENSE AGREEMENT Initial & Date ___SS___, _/0-/6-06_
                                      _____, _____

125862.00601/11587809v.1

intent to terminate.

13.2 In the event that Licensee terminates only the exclusivity portion of this Agreement, Licensee shall have no liability for any cost to defend or enforce the '970 patent that accrue after termination of exclusivity.

13.3 Notwithstanding the foregoing, termination for any reason shall allow LICENSEE a limited license to exhaust any remaining inventory or works-in-process of Licensed Products, subject to payment of the royalty obligations herein. The termination of this Agreement under this paragraph shall be without prejudice to the remedy of the LICENSOR to recover any and all royalties due through the date of termination elected by LICENSEE.

14. Any and all notices submitted or provided for in this Agreement shall be in writing and shall be deemed to have been given sufficiently to LICENSOR if mailed, postage prepaid, by registered mail addressed to:

> Rex Darlington
> 6828 Maple Acres Dr.
> Whittemore, MI 48770

and to LICENSEE, if mailed, postage prepaid, by registered mail, addressed to:

> John Strasheim
> Extreme Technologies Inc. d/b/a BowTech
> 90554 Highway 99 North
> Eugene, OR 97402

The address of either party for receipt of notices as above provided may be

9   LICENSE AGREEMENT Initial & Date  SS  , 10-16-06
                                    _____, _____

125862.00601/11587809v.1

changed at any time by notice in writing to the other party.

15. **Confidentiality**

In consideration of the delivery and execution of this Agreement, the Parties specifically agree that:

(a) Neither the LICENSOR or LICENSEE, nor their employees, contractors, principals, shareholders, agents or any entity or person related thereto or to them shall at any time, either directly or indirectly, divulge, disclose or communicate to any person, firm, corporation or entity in any manner whatsoever, any Confidential Information. For the purpose herein, the term "Confidential Information" shall include any information, materials and trade secrets, including, but not limited to, information regarding the terms of this Agreement, pricing, methods of operation, methods of distribution, accounting information, finances, contracts, customer list, potential customers, business plans, supplier list, marketing, products, skills, performance specifications, price lists, engineering, technical and other data, designs, drawings, samples, trade secrets, and other information and know-how relating to or useful to LICENSOR or LICENSEE's businesses. Not withstanding anything to the contrary herein, the term Confidential Information, as used herein, shall not include that which: (A) is known to the other party at the time of disclosures thereof; (B) is or becomes publicly available without the breach of this Agreement by either party; and/or (C) is subsequently disclosed to the either party by a third party who is in lawful possession of the Confidential Information and is not under any obligation of confidence.

(b) LICENSOR and LICENSEE hereto specifically stipulate that as between them, the foregoing Confidential Information is important and material, and will effect the effective and successful conduct of their respective businesses and their goodwill, and that breach of the terms would constitute a material breach of this Agreement granting the non-breaching party the right to pursue any and all remedies available to it, whether or not under this Agreement, at law and/or in equity, including, but not limited to injunctive relief and/or seeing the recovery for damages as provided herein.

(c) LICENSOR and LICENSEE agree to return promptly to the other party all Confidential Information upon termination of this Agreement, whether due to default or otherwise, and further agrees that neither LICENSOR or LICENSEE will not use of disclose

10 LICENSE AGREEMENT Initial & Date  JS  , 10-16-06

125862.00601/11587809v.1

information which is confidential hereunder after termination of this Agreement, irrespective of the reason for such termination.

16. This Agreement shall be interpreted in accordance with the laws of the State of Michigan, U.S.A. LICENSOR and LICENSEE hereby agree that any claims related to this Agreement will be filed in Michigan and each hereby consents to jurisdiction and venue in the State of Michigan.

17. This Agreement constitutes the full and complete understanding between the parties, and no changes and/or modifications shall be binding unless in writing and signed by both parties.

18. The licenses granted hereunder are the sole licenses granted, and no further licenses are intended or should be implied.

IN WITNESS WHEREOF, the parties executed this Agreement by the signatures of its proper signing officer or owner, duly authorized in that behalf

Date:

By: _____
    Name: Rex Darlington
    Title: Owner

**Extreme Technologies, Inc., dba BowTech**

Date: 10-16-06

By: _____
    Name: John Strasheim
    Title: President

11    LICENSE AGREEMENT  Initial & Date  SS  , 10-16-06
                                        _____, _____

125862.00601/11587809v.1

## Appendix "A"

**Royalties under Paragraph 2 of this Agreement shall be calculated as follows:**

Effective start date of this exclusive agreement through the life of the patent is to be to be January 31, 2006. The license fee of ($6.00) per Licensed Product is due until $250,000 in annual royalties are reached. After $250,000 in annual royalties is paid the license fee for the remaining Licensed Products for that year will be reduced to $4.50. A minimum annual royalty of $150,000 per year is due each year.

In the event LICENSEE elects, with proper notice, to terminate the exclusive license portion of this Agreement, Licensee shall have no liability for any cost to defend or enforce the '970 patent that accrue after termination of exclusivity. Royalty payments will be as follows;

1. A Royalty payment of $7.00 per Licensed Product is required until an annual royalty payment of $150,000 is achieved.
2. After $150,000 in annual royalties is achieved the Royalty payment is reduced to $6.00 per Licensed Product.
3. After $250,000 in annual royalties is paid the license fee for the remaining Licensed Products for that year will be reduced to $4.50.

The effective start date for this agreement will be January 31, 2006 (date of issue).

Royalties will be paid up at time of signing.

For Licensed Products which are cam assemblies used on licensed product sold and are separately sold as replacement components, LICENSEE shall pay $4.00 (US) per cam or $8.00 (US) per pair of cams.

Date:

By: _____
      Name: Rex Darlington
      Title: Owner

**Extreme Technologies, Inc., dba BowTech**

Date: 10-16-06

By: _____
      Name: John Strasheim
      Title: President

12    LICENSE AGREEMENT Initial & Date __JS__ , 10-16-06

                                                                           _____ , _____